UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHEILA M.B.,**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

Civ. No. 6:20-cv-01745-MO

**OPINION & ORDER**

MOSMAN, District Judge:

Plaintiff Sheila M.B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On May 16, 2018, Plaintiff filed a Title XVI application for Supplemental Social Security Income ("SSI") benefits due to an alleged disability beginning on October 1, 2001. Tr. [ECF 11] at 205. Plaintiff later amended her date of disability to May 16, 2018. Tr. 182. On November 15, 2018, Plaintiff's claim was denied initially and upon reconsideration. Tr. 125. A hearing was held before an Administrative Law Judge

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

("ALJ") on December 19, 2019. Tr. 33. On January 28, 2020, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15–24. On August 14, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r, Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724–25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner

fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date ("AOD") of May 16, 2018. Tr. 18.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: bipolar disorder with depression, anxiety disorder, attention deficit and hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), history of methamphetamine abuse, marijuana use, and obesity. Tr. 18. The ALJ found that Plaintiff did not have severe impairments relating to Plaintiff's allegations of hypothyroidism, hypertension, bradycardia, and sleep disorders. Tr. 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" but with the following additional limitations:

> The claimant should not climb ladders, ropes, or scaffolds, and should not have any exposure to hazards such as unprotected heights, dangerous moving machinery, or commercial driving. The claimant is limited to work involving simple, routine tasks, and is capable of working in an environment involving no more than occasional, brief, superficial interaction with the general public, and the performance of

tasks involving no more than occasional, superficial interaction with co-workers.

Tr. 21.

At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 25. The ALJ found at step five that Plaintiff could perform jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as a Producer Packer, Cleaner II, and Industrial Cleaner. Tr. 26. As a consequence, the ALJ determined that Plaintiff was not disabled. Tr. 27.

## STANDARD OF REVIEW

A Commissioner's decision will be upheld if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r, Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.*

at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony; (2) assessing medical opinion evidence; and (3) undermining lay witness testimony. I address each issue in turn.

### I.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* An ALJ may use "ordinary

techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* The ALJ may also rely on "other evidence" factors such as activities of daily living, claimant's reported descriptions of symptoms, and their treatment history in assessing a Plaintiff's testimony." *See* 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii).

### A. Plaintiff's Testimony

Plaintiff is a 49-year-old individual alleging issues relating to hypothyroidism, bradycardia, PTSD, depression, bipolar disorder, colitis, polyps, anxiety, obesity, insomnia, narcolepsy, reoccurring nightmares, and ADHD. Tr. 190, 214.

Regarding employment, Plaintiff wrote "Not Applicable" on her Work History Report but did explain that she "was a wife and homemaker," and her "husband worked." Tr. 213. Plaintiff testified that she had previously assisted her ex-husband at his family-owned recycling business but that she received no income or payment for these services. Tr. 40. On her Disability Report Application, Plaintiff explained she has not worked in any capacity since February 28, 2003. Tr. 190.

Plaintiff has a rather complicated and difficult relationship with her family. She was previously married for 25 years and has two adult children. Tr. 42. At her hearing, Plaintiff testified that she left her husband in October 2015 after he allegedly threatened her and her children. Tr. 41. Since then, Plaintiff has stayed with her mother or lived at her daughter's house. Tr. 41. Other times, Plaintiff

explained that she slept in her car and sometimes on the porch of a friend's apartment. Tr. 52, 54.

Plaintiff testified that she "got off illegal meth four years ago" but still struggles with her methamphetamine addiction. Tr. 49. Plaintiff also admitted to smoking marijuana and is currently growing cannabis in a garden at her daughter's house. Tr. 53.

Plaintiff explained she is currently prescribed levothyroxine for her thyroids and blood pressure medication. Tr. 55. She was also prescribed anti-depressant medications such as Aripiprazole and Fluoxetine, but Plaintiff explained that she does not require them. Tr. 56, 192. She was also previously prescribed Ritalin and Gabapentin. Tr. 58. Plaintiff was given a BiPAP device for sleeping but is unable to use it due to a lack of reliable electricity. Tr. 50, 60. She has also been prescribed "meth salts." Tr. 50.

Plaintiff described her daily activities. Plaintiff testified she does guided medication, yoga, running, jogging, stretching, and exercising with various items. Tr. 55, 57, 59. Plaintiff explained that she must "have somebody with me 24 hours" because she is unable to wash her hair, cook her own food, or go shopping for groceries. Tr. 51.

Plaintiff explained that her primary impairment problem is a memory issue. Tr. 51. She testified that she "can't remember anything" and has to "write every single thing down." *Id.* She testified she was unable to go to the grocery store because she will "get lost" and "won't know where [she is] going." Tr. 52.

### B.  ALJ Decision

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." Tr. 23. The ALJ made this determination after assessing Plaintiff's testimony and finding inconsistencies concerning her daily activities, noted improvement with treatment, noncompliance with treatment, and a description of severity inconsistent with the medical record. *Id.*

The ALJ explained that "Plaintiff has described daily activities . . . which do not corroborate her assertions of disabling mental symptoms." Tr. 24. An ALJ may discount a plaintiff's descriptions of symptoms when they are inconsistent with their daily activities. *Turner v. Comm'r, Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). For example, courts have held that a plaintiff that tended to his garden with his wife established his mental limitations were exaggerated and demonstrated stability. *Valentine v. Comm'r, Soc. Sec.*, 574 F.3d 685, 688 (9th Cir. 2009). Here, Plaintiff testified that she engages in moderate workout activities including stretching for thirty-minute sessions, curling milk jugs like free weights, "frequency therapy," running the year prior, "binaural" guided meditation, and cultivating marijuana crops in her daughter's garden. Tr. 53, 57, 59, 60. These activities take significant amounts of concentration and focus to achieve and implement. Because these

activities demonstrate mental and physical focus and attention that does not comport with Plaintiff's alleged severity, the ALJ was correct to note these inconsistencies.

Plaintiff also contests the ALJ's conclusion regarding her self-declared homeless status. Pl.'s Br. [ECF 13] at 23. The ALJ stated that Plaintiff's "assertion" that she was "homeless for past four years" is "not entirely consistent with her report that she was living with her mother when she filed her application for disability and that she was living with her daughter at the time of the hearing." Tr. 21. When asked about her "current living situation," Plaintiff answered that she has been "homeless" since she left her husband in October 2015 and is now "living temporarily" with her daughter. Tr. 41. When asked if she had a place to stay during this time Plaintiff responded "kinda, but not really . . . I had a friend with me . . . we lived on his check of 700 dollars for four years." *Id.* Plaintiff then explained that sometimes they would "rent a room for 600 dollars." *Id.* These living situations are not consistently described and would not fit a traditional definition of "homelessness." Based off Plaintiff's testimony, the ALJ was correct to describe her living condition testimony as inconsistent.

The ALJ noted that "Plaintiff has been prescribed a variety of medications, but she has not been compliant . . . despite the fact that it has been relatively effective in controlling her symptoms." Tr. 24. An ALJ may "properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). However, an ALJ should be careful not to "chastise one with a mental impairment for the exercise of

poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). When asked why she was not taking her prescribed medications, Plaintiff explained: "they want me on more medication, but I won't take it, I can do this, I will do it." Tr. 56. Plaintiff articulated that she refuses her prescribed anti-depressants, anti-psychotics, and stimulants, stating that she has "all those in my mind, I just gotta figure out how to make them work, I know I can." Tr. 56. When asked to clarify her meaning of "you can do this" Plaintiff explained that "I can stay awake, and I can function" because "I don't need all those drugs." Tr. 58. Plaintiff also explained that smoking marijuana alleviated her anxiety and helped manage her pain. Tr. 57. Based off the evidence in the record, the ALJ's consideration of Plaintiff's refusal to adhere to mental treatment was further evidence of Plaintiff's inconsistent subjective symptoms and their severity.

The ALJ also found evidence that Plaintiff's administered treatment helped alleviate some of her alleged symptoms. Tr. 22. An ALJ may discount a Plaintiff's subjective symptom testimony when relevant treatment evidence demonstrates improvement. *Morgan v. Comm'r, Soc. Sec.*, 169 F.3d 595, 599 (9th Cir. 1999). However, it is "error to isolate a few isolated instances of improvement" and "[r]eports of 'improvement' . . . must be interpreted with an understanding of the patient's overall well-being." *Garrison*, 759 F.3d at 1017. At her hearing, Plaintiff testified that she is currently taking levothyroxine and blood pressure medication which has helped her thyroid and "keep down" her pulse. Tr. 55. She also testified that she "needs gabapentin" and that it keeps her "from flopping around." *Id.* These contentions were

supported by her treating physician notes in November 2018, where she was reported to have decreased anxiety and a better outlook on life. Tr. 722. Because there was evidence that Plaintiff's treatment was significantly helping alleviate her impairments and Plaintiff attested to these improvements, the ALJ was correct in assessing that evidence as part of her testimony analysis.

On this record, I conclude that the ALJ gave clear and convincing reasons supported by substantial evidence in the record for assessing Plaintiff's subjective symptom testimony.

## II.   Medical Opinion Testimony

Plaintiff alleges the ALJ failed to identify a legally sufficient basis to reject the examining medical opinion of Dr. Lahman. An ALJ must articulate the persuasiveness of the medical opinions in the record.[2] 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). Supportability and consistency are the two most important factors that determine the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ may also consider the relationship with the plaintiff, physician specialization, and other factors like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(c)(3)–(5). "An ALJ is not required to explain how they considered the

---

[2] The Social Security Administration has altered the regulation which governs the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022). Because this claim was filed on May 16, 2018, the newer system applies. Tr. 171.

secondary factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical." *Derek M. v. Comm'r, Soc. Sec.*, No. 3:20-CV-01713-AC, 2022 WL 443980, at *7 (D. Or. Feb. 14, 2022). Ultimately, the court must determine whether the ALJ supported his decision with substantial evidence. 42 U.S.C. § 405(g).

Plaintiff asserts that the ALJ erred by improperly considering the opinion of licensed psychologist Dr. Frank Lahman. On November 27, 2019, Dr. Lahman provided Plaintiff a psychodiagnostics evaluation. Tr. 1031. After reviewing Plaintiff's medical records, Dr. Lahman examined Plaintiff and described his findings in a five-page report. Tr. 1031–35. Based off this evaluation, Dr. Lahman concluded Plaintiff had "Moderate Bipolar I Disorder, PTSD, Nicotine Use Disorder, Stimulant Use Disorder in Remission, and Obstructive Sleep Apnea." Tr. 1035.

The ALJ found Dr. Lahman's opinion "unpersuasive" and noted several inconsistencies relating to Dr. Lahman's opinion and Plaintiff's testimony. Tr. 24. Specifically, the ALJ found inconsistencies relating to Plaintiff's "reported ability to engage in activities . . . and her ability to manage her symptoms." *Id.* An ALJ may discount limitations that appear inconsistent with the plaintiff's level of activity. *Rollins v. Massarnari*, 261 F.3d 853, 856 (9th Cir. 2001). As discussed above, Plaintiff's testimony did not comport with her daily activities. Because Plaintiff's testimony, her daily activities, and Dr. Lahman's reports were all inconsistent with each other, the ALJ was correct in assessing Dr. Lahman's opinion in this manner.

An ALJ does not err by providing less weight to a medical opinion when that medical opinion relies on limited or inaccurate information. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Plaintiff told Dr. Lahman that she "has been on foot for the past four years, doing sexual favors to have a place to sleep." Tr. 1031. As discussed above, Plaintiff's description of her prior living situations does not comport to the evidence in the record and this statement is not congruent with it. Additionally, Plaintiff told Dr. Lahman that her memory loss was the result of her thyroid surgery. Tr. 1031. This justification was not found in the record and Plaintiff did not testify that her thyroid surgery affected her memory. Because Dr. Lahman was provided inaccurate and insufficient medical background and based his opinions on limited information relating to Plaintiff's alleged disability, the ALJ did not err in giving limited weight to Dr. Lahman.

The ALJ also found that Dr. Lahman's opinion was "unpersuasive because it is inconsistent with the evidence of record" and "somewhat inconsistent" with his examination of Plaintiff. Tr. 24. During her evaluation, Dr. Lahman explained that Plaintiff "appeared to be in a hypomanic state" during the evaluation and that "considering this is her mental state when adhering to prescribed medications and abstinent from illicit substances, I do not consider her capable of sustaining attention or being able to persist at simple tasks." Tr. 1035. However, on the very next page of his report, Dr. Lahman noted that Plaintiff has a "moderate" ability to "understand and remember simple instructions" as well as being able to "carry out simple instructions" and a moderate "ability to make judgments on simple work-related

decisions." Tr. 1036. These inconsistencies were correctly noted and assessed by the ALJ in their decision regarding medical opinions.

Finally, the ALJ devalued Dr. Lahman's opinion because it was "based solely on his one-time examination of the plaintiff." Tr. 25. An ALJ may reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Dr. Lahman performed a onetime evaluation consisting of a single interview with Plaintiff resulting in an eight-page analysis. Tr. 1031–40. Many of these pages included checkbox information and was predicated on erroneous or contradictory evidence supplied by Plaintiff. *Id.* The evidence in the record supports the ALJ's determination that Dr. Lahman provided an inadequate opinion and report on Plaintiff's mental impairments.

On this record, I conclude that the ALJ gave adequate justification in their assessment of Dr Lahman's medical opinion.

### III. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Specifically, an ALJ must consider lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, errors in assessing lay witness testimony are harmless when

the witness's testimony matches the plaintiff's own testimony and the ALJ rejected the plaintiff's testimony for "well-supported, clear and convincing reasons." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

A function report was filed by Plaintiff's mother on her behalf. Tr. 222. The ALJ found that "consideration has been afforded" to Plaintiff's mother's testimony and to the extent it is inconsistent, "the objective medical evidence, the claimant's treatment notes, and opinions of the DDS consultants" are of greater persuasive value. Tr. 25. An ALJ may discount lay witness evidence if inconsistent with other provided evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Additionally, lay witness testimony may be discounted when it merely regurgitates the plaintiff's own testimony. *Valentine v. Comm'r, Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ noted several inconsistencies between Plaintiff's testimony and her mother's report regarding her ability to take care of herself and interact in public. Tr. 25. For example, Plaintiff's mother described her daughter as being able to independently cook her own meals, groom herself, phone friends, and go outside unsupervised twice a day, including 90-minute trips to the grocery store via public transportation. Tr. 222–24. Plaintiff's mother also explained that she follows written instructions "good" and spoken instructions "most of the time." Tr. 227. Based off the evidence in the record, the ALJ correctly assessed Plaintiff's lay witness testimony and established that it comports to her RFC.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 18th day of October 2023.

MICHAEL W. MOSMAN
United States District Judge